IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PATRICIA MARIE CORWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-1019-M |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Ms. Patricia Corwin applied for insurance benefits based on an alleged disability. *See* Administrative Record at pp. 88-90 (certified December 21, 2010) ("Record"). The Social Security Administration rejected the claim,[1] and Ms. Corwin initiated the present action. In part, she alleges legal error in the judge's evaluation of an opinion by a treating physician.[2] The Court should reverse the administrative decision and remand the action for further findings.

---

[1] Record at pp. 1-4, 11-22, 39-40.

[2] Ms. Corwin also suggests a lack of substantial evidence to support the judge's residual functional capacity ("RFC") findings and the determination at step five. But the Court need not consider these allegations in light of the suggested reversal on other grounds. *See infra* pp. 2-14; *see also Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of this case on remand.").

I.   Standard of Review

The Court must determine whether the Social Security Administration's decision is based on substantial evidence and the correct legal standard. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Reversal is necessary if the agency had failed "'to provide this court with a sufficient basis to determine that appropriate legal principles have been followed.'" *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (*per curiam*; citations omitted).

II.  Opinions by Dr. Mehle

Dr. Mehle completed a "Physical Residual Functional Capacity Questionnaire." Record at pp. 418-21. According to Dr. Mehle, the Plaintiff:

- could sit, stand, and walk for less than two hours during an eight hour workday,[3]

- needed to walk for approximately 5 minutes at 20 minute intervals throughout the day,[4]

- would require work which allowed her to shift positions, at will, between sitting, standing, and walking,[5]

- would need to take unscheduled breaks every 20 minutes throughout the workday,[6]

---

[3]   Record at p. 419.

[4]   Record at pp. 419-20.

[5]   Record at p. 420.

[6]   Record at p. 420.

2

- would require her legs to be elevated at least 60 degrees for 4 to 6 hours if she engaged in work which required prolonged sitting,[7]

- could occasionally lift and carry up to 10 pounds,[8]

- could never twist, crouch, or climb ladders,[9]

- could occasionally stoop/bend and climb stairs,[10] and

- would experience significant limitations in work involving repetitive reaching, handling, or fingering.[11]

III.  The Administrative Law Judge's Consideration of Dr. Mehle's Opinions

In his evaluation of the evidence, the administrative law judge provided the following analysis of Dr. Mehle's assessment:

> As for the opinion evidence, Dr. Mehle entered a residual functional capacity limiting the claimant to significantly less than a full range of sedentary work, with restrictions that would preclude the claimant from working more than 4 hours a day. However, the medical records do not contain the progress notes of this physician. Consequently, there is not reference to positive findings upon physical examination or laboratory testing that would support the imposition of such restrictions. Moreover, this assessment is not consistent with the medical evidence as a whole. Finally, the undersigned notes that the decision of disability is reserved to the Commissioner of Social Security. Consequently, the undersigned finds this assessment to be of limited probative value.

*Id.* at p. 20 (citations omitted).

---

[7]  Record at p. 420.

[8]  Record at p. 420.

[9]  Record at p. 420.

[10]  Record at p. 420.

[11]  Record at p. 421.

IV.  The Administrative Law Judge's Findings on Residual Functional Capacity

Ultimately, the administrative law judge concluded that Ms. Corwin retained the residual functional capacity to:

- perform sedentary work as defined in 20 CFR 404.1567(a),[12] with an accommodation to change positions every hour,

- stand and walk for 15-20 minutes,

- frequently bend, twist, and reach,

- occasionally crouch,

- rarely stoop, and

- avoid prolonged strong grip or prolonged repetitive movements of the wrist and fingers due to slightly decreased dexterity.

*Id.* at p. 15.

V.  Evaluation of a Treating Physician's Opinions

When addressing a treating source's opinion, the administrative law judge must decide whether to give it controlling weight. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (*per curiam*). This evaluation entails a determination of whether the opinions are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (citation omitted). If not, the administrative law judge can decline to give controlling

---

[12]  "Sedentary" work normally requires an ability to stand or walk up to 2 hours per day and remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. *See* Social Security Ruling 96-9p, *Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work*, 1996 WL 374185, Westlaw op. at 6 (July 2, 1996).

4

weight to the opinions. *See id.* At that point, the judge must weigh the evidence and "give good reasons" for the impact assigned to the opinions. *Id.* If the judge completely rejects the opinions, he must give "'specific, legitimate reasons.'" *Id.* (citation omitted).

VI. <u>The Judge's Evaluation of Whether the Opinion Was Entitled to Controlling Weight</u>

The judge's initial task was to decide whether to give controlling weight to Dr. Mehle's opinions. *See supra* p. 4. If the opinion lacked support in clinical and laboratory diagnostic techniques, the judge could decline controlling weight. *See supra* pp. 4-5. The administrative law judge apparently reached this conclusion, as he cited the absence of laboratory testing results supportive of Dr. Mehle's opinion. *See supra* p. 3 (quoting Record at p. 20). This deficiency allowed the judge to proceed to the next step in his evaluation of the medical opinion.

VII. <u>The Relevant Factors in the Weighing of Dr. Mehle's Opinion</u>

That step involved evaluation of Dr. Mehle's assessment under the following factors:

- the length of the treatment and the frequency of examination,

- the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed,

- the degree to which the physician's opinion is supported by relevant evidence,

- the consistency between the opinion and the record as a whole,

- the possible specialization in the area upon which an opinion is rendered, and

5

- the existence of other factors brought to the administrative law judge's attention which tend to support or contradict the opinion.[13]

VIII. The Administrative Law Judge's Rejection of Dr. Mehle's Opinion

As evidenced by the RFC findings, the administrative law judge rejected Dr. Mehle's opinions regarding Ms. Corwin's abilities to sit, stand, walk, change positions, bend, twist, reach, crouch, and stoop. *Compare* Record at p. 15 (administrative law judge's RFC findings), *with id.* at pp. 418-20 (Dr. Mehle's opinion). In doing so, the judge relied on:

- a lack of progress notes from Dr. Mehle which had reflected findings in support of the limitations in the RFC assessment,

- a lack of consistency between Dr. Mehle's assessment and the medical record as a whole, and

- the Commissioner's exclusive responsibility to decide whether the claimant was disabled.

*Id.* at p. 20; *see supra* p. 3. These rationales were not legitimate.

A. The First Rationale: Absence of Dr. Mehle's Progress Notes in the Record

The first rationale was not legitimate because the record did contain Dr. Mehle's progress notes, and the judge's contrary statement involved a mistake.

---

[13] 20 C.F.R. § 404.1527(d); Social Security Ruling 06-03p, *Titles II and XVI: II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939, Westlaw op. at 2-3 (Aug. 9, 2006).

The Defendant acknowledges that the record contained progress notes by Dr. Mehle.[14] Indeed, the record confirms that Dr. Mehle had authored progress notes for Ms. Corwin. *See* Record at pp. 170, 179-83, 188, 193, 195, 197, 200, 202, 207-209, 222, 232-50, 302, 367.[15] Thus, the administrative law judge was simply mistaken when he relied on the absence of Dr. Mehle's progress notes in the record.[16]

B.   The Second Rationale: Inconsistency with the Record as a Whole

The administrative law judge's second rationale involved inconsistency "with the medical evidence as a whole." *Id.* at p. 20; *see supra* p. 3. But the administrative law judge

---

[14] *See* Brief in Support of Commissioner's Decision at p. 12 (Apr. 27, 2011) ("although the [administrative law judge] did not acknowledge that the record contained progress notes from Dr. Mehle" (citation & footnote omitted)).

[15] In the Plaintiff's brief, she identifies other "treatment records" at pages 156, 198-99, 282-301, and 303-311. Plaintiff's Brief of Her Statement of Position with Authorities at p. 8 (Feb. 28, 2011). But these records were not "progress notes" signed by Dr. Mehle.

[16] The administrative law judge inferred from the absence of Dr. Mehle's progress notes that "there [was] not reference to positive findings upon physical examination or laboratory testing that would support the imposition of [this physician's] restrictions." Record at p. 20; *see supra* p. 3. Many of the progress notes in the record are unsigned, and it is impossible to determine whether they related to Dr. Mehle's treatment. *See supra* note 15. But some of these notes do appear to support Dr. Mehle's assessment. For example, the unsigned progress notes reflect:

- reduced range of motion in Ms. Corwin's knees and neck,

- pain in the abdomen and shoulders, and

- anxiety and depression.

Record at pp. 304-305, 307-309, 311. Dr. Mehle's opinions appear to match some of these notations. For example, the physician stated that the Plaintiff had anxiety, depression, reduced range of motion, and pain. *Id.* at pp. 418-19.

7

did not identify the alleged inconsistencies. Without knowing what the judge thought was inconsistent, the Court cannot assess his rationale in any meaningful way.

The Tenth Circuit Court of Appeals addressed a similar issue in *Langley v. Barnhart*, 373 F.3d 1116, 1122 (10th Cir. 2004). There the administrative law judge failed to identify the alleged inconsistencies, leading the Tenth Circuit Court of Appeals to conclude that his reasons for rejecting the treating doctor's opinion were not "'sufficiently specific' to enable this court to meaningfully review his findings." *Id.* at 1123.

The same rationale applies here, as the administrative law judge failed to specify the evidence that was inconsistent with Dr. Mehle's RFC assessment. Record at p. 20; *see supra* p. 3. The absence of specificity in the rationale renders it invalid.

    C.    The Third Rationale: Reservation of the Disability Determination to the Commissioner

Finally, the administrative law judge reasoned that "the decision of disability is reserved to the Commissioner of Social Security." Record at p. 20. The judge's statement is technically correct,[17] but inapplicable because Dr. Mehle did not render an opinion on the existence of a disability. *See id.* at pp. 418-21. Thus, the administrative law judge's true

---

[17] *See* Social Security Ruling 96-5p, *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, 1996 WL 374183, Westlaw op. at 2, 5-6 (July 2, 1996).

statement did not fit the situation and this rationale was not legitimate. *See Krauser v. Astrue*, 638 F.3d 1324, 1331-32 (10th Cir. 2011).[18]

IX.   The Defendant's Arguments

Although the Defendant acknowledges the administrative law judge's error, he defends the written decision with four arguments:

- The administrative law judge referred to Dr. Graves' notes;

- the judge provided a comprehensive review of the medical evidence;

- the evidence did not support "the full extent of Dr. Mehle's opinions;" and

- the judge included many of the limitations assessed by Dr. Mehle.

Brief in Support of Commissioner's Decision at p. 12 (Apr. 27, 2011).

---

[18]   In *Krauser v. Astrue*, the administrative law judge discounted a treating physician's assessment of work-related limitations in part because findings on the RFC are reserved to the Commissioner. *See Krauser v. Astrue*, 638 F.3d at 1332. The Tenth Circuit Court of Appeals held that this analysis was incorrect and explained:

> [The treating physician] found specific work-related functional limitations, and then the [administrative law judge] determined the consequences of those medical findings for purposes of RFC, i.e., that with those limitations, [the claimant] would not be able to perform sedentary work. That is precisely how the inquiry should proceed, with the treating physician performing her medical role and the [administrative law judge] left to his role as adjudicator. Of course the medical findings as to work-related limitations would, if accepted, impact the [administrative law judge's] determination of RFC - they always do, because that is what they are for - but that does not make the medical findings an impermissible opinion on RFC itself. If doctors could only give opinions on matters that could not affect RFC, medical opinions would be inherently useless in disability determinations.

*Id*.

The Defendant does not say how these arguments would affect the Court's analysis. Logically, the administrative law judge's mistake about the presence of Dr. Mehle's progress notes, the vagueness of the reference to contrary medical evidence, or the reliance on an inapplicable principle about ultimate findings of fact would not be affected by the Defendant's arguments about: (1) the existence of contrary evidence, (2) the administrative law judge's references to Dr. Graves' notes, or (3) the thoroughness of the judge's summary of the medical evidence in general. Conceivably, the Defendant's arguments might have been intended to suggest harmlessness in the administrative law judge's errors. Even with this liberal reading of the Defendant's arguments, however, they would be invalid.

The Tenth Circuit Court of Appeals has recognized a narrow principle of harmlessness in review of the Social Security Administration's disability findings. *See Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004). In this setting, an error is considered "harmless" only if the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 1145. The Court cannot express such a finding with any level of confidence.

The Defendant points out that the judge had referred to Dr. Valerie Graves' notes. *See supra* p. 9. There were two such references in the administrative law judge's decision.

The first reference stated in its entirety:

> The claimant was treated intermittently at Parview Hospital of El Reno, Oklahoma, after her alleged onset date. Valerie Graves, P.A., wrote a letter on January 25, 2007 noting that the claimant was being followed for auto-immune/connective tissue disease. She had been diagnosed with rheumatoid arthritis of the hands and hips and was having increased difficulty with

> working long hours on her legs because of hip and knee pain. Chest x-rays of April 4, 2007 showed minor perihilar infiltrates comparable with viral syndrome. Chest x-rays of April 8, 2007 showed right perihilar nodular mass lesion etiology was uncertain. A CT scan of the chest on April 8, 2007 showed no evidence of right hillar or perihilar mass and indeterminate subcentimeter noncalcified nodular density right lung, and postoperative cholecystectomy. The claimant was hospitalized from April 4, 2007 through April 8, 2007 and was given a final discharge diagnosis of pneumonia, dehydration, diarrhea, nausea and vomiting. The claimant complained of pedal edema and bilateral lower leg pain on July 18, 2007. On July 19, 2007 a bilateral lower extremity Venous Duplex report due to leg swelling and lower extremity pain showed all the imaged veins in the bilateral lower extremities showed no evidence of filling defect or deep vein thrombosis (DVT), all veins imaged were completely compressible, and there was no evidence of DVT in the bilateral lower extremities (Exhibits 4F and 5F).

Record at p. 16. The second reference stated:

> Dr. Valerie Graves treated the claimant in September 2007 upon referral by Dr. Mehle for bilateral lower leg paresthesia, hip pain, stiffness, decreased range of motion and swelling, as well as elbow tenderness, and decreased range of motion strength (Exhibit 13F).

*Id*. at p. 17.

From the two references to Dr. Graves' treatment, the Court can only guess whether the administrative law judge would have reached the same conclusion if he had recognized Dr. Mehle's progress notes in the record.

The judge's references to Dr. Graves' treatment included her assessment of decreased range of motion and an inability to work long hours due to hip and knee pain. *See supra* pp. 10-11. Like Dr. Graves, Dr. Mehle stated that the Plaintiff had pain in her hip and reduced range of motion. Record at p. 418. With the reduced range of motion and hip pain, Dr. Mehle assessed an ability to spend fewer than two hours per work-day sitting or standing,

11

with frequent interference in her ability to concentrate. *Id.* at p. 419. Nonetheless, the administrative law judge inferred from the absence of Dr. Mehle's progress notes that her assessment was questionable based on the absence of a "reference to positive findings upon physical examination or laboratory testing that would support the imposition of such restrictions." *Id.* at p. 20; *see supra* p. 3. The administrative law judge's references to Dr. Graves' observations would appear to supply the "positive findings" believed to be missing. Thus, the two references to Dr. Graves' treatment would not enable the Court to conclude, with confidence, that the administrative law judge would have reached the same decision if he had recognized the existence of Dr. Mehle's progress notes in the record.

The Defendant's second argument is that the administrative law judge had provided a comprehensive review of the medical record. *See supra* p. 9. Notwithstanding the administrative law judge's survey of the medical evidence, he appeared to draw particular importance from the absence of Dr. Mehle's progress notes in the record. Indeed, the judge specifically inferred from this "fact" alone that "there [was] not reference to positive findings upon physical examination or laboratory testing that would support the imposition of [Dr. Mehle's] restrictions." Record at p. 20; *see supra* p. 3.[19] Thus, the judge's detailed survey

---

[19] The administrative law judge stated: "[T]he medical records do not contain the progress notes of [Dr. Mehle]. Consequently, there is not reference to positive findings upon physical examination or laboratory testing that would support the imposition of such restrictions." Record at p. 20; *see supra* p. 3.

of the medical evidence does not lessen the importance of his mistaken belief that Dr. Mehle's progress notes were missing.

According to the Defendant, "the evidence did not support the full extent of Dr. Mehle's opinions." Brief in Support of Commissioner's Decision at p. 12 (Apr. 27, 2011); *see supra* p. 9. But, as discussed above in the context of the administrative law judge's decision, sweeping generalizations like this are impossible to review. *See supra* pp. 7-8. Like the administrative law judge, the Defendant does not identify the contrary medical evidence or the parts of Dr. Mehle's opinion that were supposedly contradicted. *See* Brief in Support of Commissioner's Decision at p. 12 (Apr. 27, 2011).

The Defendant also contends that the administrative law judge had included many of the limitations assessed by Dr. Mehle. *See supra* p. 9. But, as noted above, there were material differences between the functional assessments by Dr. Mehle and the administrative law judge. *See supra* pp. 2-4. The issue, for purposes of harmlessness, is whether the Court can confidently conclude that the administrative law judge would have rejected the disability claim without the errors in his analysis of Dr. Mehle's opinions. *See supra* p. 10. The Court cannot draw that conclusion because adoption of Dr. Mehle's assessment would have dramatically changed the assessment of residual functional capacity. *See supra* pp. 2-4, 13.

The materiality of the error is underscored by the vocational expert's testimony. At the hearing, the expert testified that someone with the limitations described by Dr. Mehle would not have been able to work full-time because "the amount of time allowed for sitting, standing, walking is much less than a typical eight-hour day, in addition to the all, all the

other postural limitations and breaks and things of that sort." Record at pp. 36-37. The judge ultimately relied on other testimony by the vocational expert to find that the Plaintiff could not engage in substantial gainful activity. *Id.* at p. 22. If the administrative law judge had credited more of Dr. Mehle's opinions, the vocational expert's testimony could have led to a different outcome on the ultimate issue of a disability. In these circumstances, the Court cannot confidently conclude that the administrative law judge would have reached the same outcome without the erroneous analysis of Dr. Mehle's opinions.

X.     Recommended Ruling

The Court should reverse the decision of the Social Security Administration and remand for further findings.

XI.    Notice of the Right to Object

Any party may file written objections with the Clerk of the United States District Court, Western District of Oklahoma. *See* 28 U.S.C. § 636(b)(1) (2009 supp.). The deadline for objections is July 15, 2011. *See* Fed. R. Civ. P. 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1) (2009 supp.). The failure to file timely objections would result in waiver of the right to appeal the suggested ruling.[20]

---

[20] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

XII.	Status of the Referral

    The referral is discharged.

    Entered this 28th day of June, 2011.

*Robert E. Bacharach*
Robert E. Bacharach
United States Magistrate Judge